**E-FILED**
Thursday, 24 September, 2015  04:11:54 PM
Clerk, U.S. District Court, ILCD



IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE | ) | |
| CORPORATION, as Receiver of | ) | |
| COUNTRY BANK, | ) | |
| | ) | |
| Plaintiff, | ) | No. 4:13-cv-04075-SLD-JEH |
| | ) | |
| v. | ) | |
| | ) | |
| KENNETH E. HOFFMAN, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>ORDER</u>

Plaintiff Federal Deposit Insurance Company ("the FDIC"), as receiver for the failed

Country Bank, alleges that Defendant Kenneth Hoffman defaulted on a loan and breached the

terms of a promissory note by failing to pay timely the principal and interest due under the note.

The FDIC now moves for summary judgment, ECF No. 22, and Hoffman cross-moves for

summary judgment, ECF No. 25.  For the following reasons, the FDIC's motion is GRANTED

and Hoffman's motion is DENIED.

## BACKGROUND[1]

The loan on which the FDIC seeks to collect was for $1.5 million, and was governed by a

note, executed on June 22, 2009.[2]  P ¶ 1; *see* FDIC Mot. Summ. J. Ex. A.  This loan ("the TIF

loan") was secured by a TIF bond. P ¶ 3.  The note provides that the loan debt is payable on

---

[1] The facts in this section are taken from the parties' statements of undisputed  material facts.  Where the Court draws from the FDIC's statement of material facts, FDIC Mot. Summ. J. 2–3, the reference will be designated with the letter "P," followed by a pilcrow and the page number, thus: "P ¶ xx."  Where Hoffman's facts are used, the initial letter will be a "D."

[2] Country Bank was the FDIC's predecessor in interest.  The FDIC succeeded Country Bank on October 14, 2011, after the latter was placed into receivership and the FDIC appointed as the receiver.  P ¶ 7.

demand.  P ¶ 2.  Hoffman failed to make payments on the loan, which also makes the loan repayable immediately.  P ¶ 5.

In a separate transaction, Hoffman and his wife jointly borrowed $157,300 ("the property loan") from Country Bank on April 25, 2011, in order to purchase three pieces of property, which secured the loan.  Hoffman Dep. 20:4–20:22, FDIC Mot. Summ. J. Ex. C; ECF No. 23-3. *See* Settlement Agreement, Hoffman Mot. Summ. J. Ex. A; ECF No. 25-1.  When Hoffman failed to make payments on the property loan, the FDIC, which had by then succeeded Country Bank as holder of the debt, contracted with Midland Loan Services to settle it.  Covey Dep. 10:4–10:18, FDIC Mot. Summ. J. Ex. D; ECF No. 23-4.  A representative of Midland, Erica Covey, arranged with Hoffman to tender the deeds for the three properties in exchange for forgiveness of the debt, in order to avoid foreclosure proceedings.  Covey Dep. 12:18–12:22. This transaction ("the release") was effected on October 15, 2012.  D ¶ 1.

The agreement the parties signed to effect the release stated that Hoffman and his wife

> [were] willing to settle their disputes with [the] FDIC-Receiver by tendering to [it] three . . . deeds in lieu of foreclosure . . . which shall terminate the [Hoffmans'] interests in the Properties and relieve the [Hoffmans], and each of them, from any further liability whatsoever arising out of or otherwise related to, the Loan Documents or the Properties, and FDIC-Receiver is willing to accept the Deeds In Lieu of Foreclosure in satisfaction in full of any and all claims that FDIC-Receiver has or may assert against the Released Parties.

Release 2, Hoffman Mot. Summ. J. Ex. A, ECF No. 25-1.  The release also provided, in a single paragraph labeled "Release of Released Parties" ("the release clause"):

> For itself . . . FDIC-RECEIVER hereby releases and discharges [the Hoffmans] . . . from any and all liabilities, obligations, claims, actions, causes of action, liens, fees and demands of whatsoever kind or nature, whether known or unknown, that FDIC-RECEIVER had, now has, or may have against such Released Parties, including, but not limited to, those arising out of, based on, or in any way connected with the Loan Documents, or any portion thereof, or the Properties or relating to claims raised against the released parties.

*Id.* at 3.

The FDIC filed the instant lawsuit on August 8, 2013 to collect on the earlier debt, the TIF loan. Compl., ECF No. 1.  On January 28, 2014, Hoffman moved for summary judgment, ECF No. 15, arguing that the language in the "Release of Released Parties" paragraph of the release had discharged him not just from the $157,300 property loan debt, but also from any obligation to repay the $1.5 million he owed on the TIF loan.  The Court denied Hoffman's motion because the Court determined that the contract was ambiguous on its face, and Hoffman had not provided any evidence suggesting that the parties had intended to agree to his preferred interpretation of the release clause.  Sept. 24, 2014 Order 8.

## DISCUSSION

### I.     Standard on Summary Judgment

Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (internal quotation marks omitted).  A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial—that is, whether there is sufficient evidence favoring the non-moving party for a jury to return a verdict in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997).  The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.

*McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson*, 477 U.S. at 255).

The movant in a summary judgment motion bears the initial burden of production— pointing the court to the materials in the record that "demonstrate the absence of a genuine issue of material fact" for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmovant bears the ultimate burden of persuasion on a particular issue, however, the requirements on the movant are "not onerous" and "may be discharged by showing—that is, point[ing] out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (internal quotation marks omitted). Once the movant discharges her burden, the burden shifts to the nonmovant to "make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322. To satisfy this burden, a nonmovant must "go beyond the pleadings . . . to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor." *Modrowski*, 712 F.3d at 1169 (internal quotation marks omitted). "A plaintiff may not defeat the defendant's properly supported motion for summary judgment without offering any significant probative evidence tending to support the complaint." *Tri-Gen Inc. v. Int'l Union of Operating Engineers, Local 150, AFL-CIO*, 433 F.3d 1024, 1038 (7th Cir. 2006) (internal quotation marks omitted).

## II.   Illinois Contract Law

Based on the parties' undisputed agreement in the release as to choice of law, Def.'s Mot. Summ. J., Ex. A at 4, the Court applies Illinois law. *See Piper Aircraft v. Reyno*, 454 U.S. 235, 243 n.8 (1981) (stating that "a [federal] court ordinarily must apply the choice-of-law rules of the state in which it sits" (citing *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941)); *In*

*re Marriage of Adams*, 551 N.E.2d 635, 638 (1990) (recognizing the applicability of choice of law clauses in contracts) (citing *Reighley v. Cont'l Ill. Nat'l Bank & Trust Co.*, 61 N.E.2d 29, 33 (Ill. 1945)).  Federal courts' "role in interpreting a question of state law is to predict how the highest court of the state would answer the question."  *Cannon v. Burge*, 752 F.3d 1079, 1091 (7th Cir. 2014) (citations omitted).

A release is a type of contract in which "a party abandons a claim to a person against whom that claim exists."  *Whitehead v. Fleet Towing Co.*, 442 N.E.2d 1362, 1364 (Ill. App. Ct. 1982) (citing *Murphy v. S-M Delaware, Inc.*, 420 N.E.2d 456, 459 (Ill. App. Ct. 1981)).  A court's main objective in interpreting a contract is to give effect to the intent of the parties. *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007).  In doing so, a court must look at the whole contract, rather than particular portions in isolation:

> A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent . . . . Moreover, because words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others . . . . The intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself.

*Id*. at 233 (citations omitted).  The parties' intention must be determined from the contract itself, where no ambiguity exists.  *Farm Credit Bank of St. Louis v. Whitlock*, 581 N.E.2d 664, 667 (Ill. 1991).

A contract is ambiguous when it is "susceptible to more than one reasonable meaning or obscure in meaning through indefiniteness of expression."  *Countryman v. Indus. Comm'n*, 686 N.E.2d 61, 64 (Ill. App. Ct. 1997).  A release is thus ambiguous when it "contains conflicting release provisions that express different intentions."  *Countryman*, 686 N.E.2d at 64.  "Where [a] contract is ambiguous, its interpretation is generally a question of fact subject to rules of contract construction and parol evidence."  *Id*. at 63–64.  Where a contract remains ambiguous after

5

applying rules of contract construction and any parol evidence, the question must be left to the trier of fact. *United Farm Bureau Mut. Ins. Co. v. Elder*, 412 N.E.2d 630, 632–33 (Ill. App. Ct. 1980), *reversed on other grounds by United Farm Bureau Mut. Ins. Co. v. Elder*, 427 N.E.2d 127 (1981). "If, however, the contract is susceptible to only one meaning when considered in light of parol evidence and rules of construction, the court may interpret the contract for itself." *Countryman*, 686 N.E.2d at 64.

In a release in Illinois, "[g]eneral words of release are restrained in effect by the specific recitals contained in the instrument . . . . Illinois courts restrict the language of a general release to the things or persons intended to be released and refuse to interpret generalities to defeat a valid claim not then in the minds of the parties." *Farmers Auto. Ins. Ass'n v. Kraemer*, 857 N.E.2d 691, 694 (Ill. App. Ct. 2006). The assertion that a release bars a legal claim is an affirmative defense. Fed. R. Civ. P. 8(c)(1).

## III.    Analysis

In light of the Court's October 2014 ruling, both parties have moved, Hoffman for the second time, for summary judgment, each party arguing that the release, while ambiguous on its face, must be construed, in light of the parties' contemporaneous negotiations, as favoring his interpretation. To wit: the FDIC argues that Hoffman breached the terms of the TIF loan by nonpayment, FDIC Mot. Summ. J. 4, that the FDIC was entitled to demand full repayment of the TIF loan, *id.*, and that the circumstances in which the FDIC released Hoffman from the property loan show that the parties did not thereby intend the release to release Hoffman from the TIF loan, *id.* at 6–8. Hoffman, conversely, argues that the release released Hoffman from all of his debt obligations to the FDIC, including the TIF loan, and that thus, the FDIC's attempt to collect on the TIF loan fails as a matter of law. Hoffman Mot. Summ. J. 2. Hoffman does not contest

6

that he signed the TIF note or failed to abide by its terms, triggering an immediate repayment obligation, but rather argues only the affirmative defense that he was released by the release from any obligation to repay the TIF loan.

A grant of summary judgment for the FDIC is appropriate because parol evidence submitted by the parties clearly shows that the FDIC and Hoffman intended the release to discharge Hoffman only from his debt obligations under the property loan.

As an initial matter, as the Court held in its September 24, 2014 Order, the release is ambiguous because it contains specific language clearly intended to release the Hoffmans only from the property loan ("[the Hoffmans are released] from any further liability whatsoever arising out of or otherwise related to, the Loan Documents or the Properties," Release 2) alongside sweepingly general language that, taken literally, would release the Hoffmans from all debt obligations owed to the FDIC, including the TIF loan ("any and all liabilities, obligations, claims, actions, causes of action, liens, fees and demands of whatsoever kind or nature, whether known or unknown, that FDIC-RECEIVER had, now has, or may have against [the Hoffmans]," *id.*at 3). Illinois courts have repeatedly held that, where a release refers in one section specifically and repeatedly to an incident or event, but in another portion refers sweepingly to all other possible incidents or events, the contract is facially ambiguous, because it expresses conflicting intentions about what the contract aims to cover. *See Countryman*, 686 N.E.2d at 64; *Whitlock*, 581 N.E.2d at 667. Because the release in this matter is split in this way, it is appropriate to turn to "parol evidence and rules of construction" to determine the parties' mutually expressed intent. *Countryman*, 686 N.E.2d at 64. The parties have now supplied ample parol evidence with their motions for summary judgment.

All of the evidence tends to show that the parties intended to and did agree, in executing the release, to release the Hoffmans only from their obligations under the property loan.  In his deposition, Hoffman explained that, after Covey contacted him on behalf of the FDIC to seek repayment of the property loan, he and Covey agreed that "[Hoffman] would offer a deed for each of these three lots in exchange for being released from [the property loan]."  Hoffman Dep. 32:8–32:10.  Hoffman understood this arrangement during negotiations to be "[giving] back the deeds or lots in exchange for forgiveness of an obligation."  *Id.* at 33:19–33:20.  The two parties did not include the TIF loan in their negotiations for forgiveness of the property loan.  *Id.* at 34:2–34:6, 36:4–36:7; Covey Dep. 24:3–24:6.  Both parties knew that Covey was not settling the TIF loan at that time.  Hoffman Dep. 37:6–37:8.  The parties agree that the settlement had "nothing to do" with the TIF loan.  Hoffman Dep. 47:19–47:25; *see* Covey Dep. 34:3–34:7, 40:16–40:23.

All that Hoffman has to rely on in support of his position are what he now claims his subjective beliefs to have been at the time he executed the release—and he describes those beliefs in language so vague as to make it difficult to conclude that even he thought the release was as sweeping as he now claims it to have been:

> The conversations that I had in reference after, basically, explaining to [Covey] our situation was she had said that she has been assigned to this particular loan, but she understands, you know, that she would take into consideration our position with our other loans, but not that she necessarily would have any jurisdiction over—I mean, she didn't personally have necessarily the power to do anything, but she understood our situation.
>
> And from what I recall, and not exact language, is that she understood, she was sympathetic with our situation, and she wasn't quite sure how, you know, all of this could be tied together.

Hoffman Dep. 35:3–35:17.  Hoffman says that it was "[his] understanding," *id.* at 43:20–43:21, that the deeds to the three properties would release him from all his debt obligations to the FDIC,

but points to not one piece of objective evidence in the record that supports the conclusion that the parties mutually assented to or expressed any intention to do so.  Hoffman's "subjective intentions are irrelevant; rather, the pertinent inquiry focuses upon the objective manifestations of the parties . . . ."  *Carey v. Richards Bldg. Supply Co.*, 856 N.E.2d 24, 27 (Ill. App. Ct. 2006).

Hoffman has pointed to no evidence suggesting that, despite mentioning his other debt obligations to the FDIC nowhere in the release, the FDIC somehow intended, in receiving deeds in lieu of foreclosure, also to excuse Hoffman from debt that, along with another obligation not part of this case, totaled $2.4 million.  *See* Hoffman Dep. 46:18–46:23.  Hoffman offers no explanation as to why the FDIC would have behaved in this exceptional way; or why it would have done so without memorializing the agreement specifically; or why, if he thought that the FDIC was behaving in such an exceptional way, he and his counsel at the time made not a single effort to memorialize the agreement as to release of the other loans in the exhaustively-worded release they eventually signed.  When a contract may be interpreted in two ways, one of which is "fair, customary, and such as prudent men would naturally execute," and the other is "inequitable, unusual, or such as reasonable men would not be likely to enter into," courts must prefer the former explanation.  *Chicago Title & Trust Co. v. Telco Capital Corp.*, 685 N.E.2d 952, 955–56 (Ill. App. Ct. 1997).  Hoffman's proffered interpretation beggars belief.

Furthermore, Illinois rules of contract construction suggest the same result.  "[W]here an ambiguity exists in a contract due to a conflict between two of its provisions, the more specific provision relating to the same subject matter controls over the more general provision."  *Countryman*, 686 N.E.2d at 64.  The "Release of Released Parties" paragraph, upon which Hoffman rests his entire motion, is as general as one can imagine a release being (lending credence to the concession of the FDIC's counsel, who drafted it, that it was a "boilerplate

9

release," Richards Dep. 13:20, Hoffman Mot. Summ. J. Ex. B; ECF No. 25-2).  It has the names

of the parties plugged in in block capitals, and not one other specific reference to any other

feature of the transaction or any other transaction—no reference to the nature of the parties'

negotiations, the specific properties being tendered, or the nature of the debt obligation being

released.  Because the language in this paragraph is so general, and the language preceding it so

specific in releasing the Hoffmans only from the property loan, the former, specific language

controls.  *See Carona v. Illinois Central Gulf R.R. Co.*, 561 N.E.2d 239, 242 (Ill. App. Ct. 1990)

(holding that an employee was not barred from suing his employer for a work-related accident

after having signed a release regarding a prior workplace accident that contained both specific

language referring to the first incident, and general release language covering all potential

claims).  Thus, both the parol evidence supplied by the parties and the rules of contract

interpretation dictate the same result.

All the extrinsic evidence and the rules of contract construction suggest that the parties

intended the release to release Hoffman only from the property loan; thus, his affirmative

defense fails.  Since Hoffman admits the other elements of the FDIC's claim against him for

breach of contract, judgment against him in the total amount of the TIF loan, and foreclosure on

the loan's collateral, is appropriate as a matter of law.

## IV.  Order Granting Plaintiff's Complaint

The Court thus finds it proper to grant judgment to the FDIC on both counts of its

Complaint, ECF No. 1—foreclosure, Compl. 3, and breach of contract, Compl. 4.  Specifically,

the Court orders that:

1. The FDIC is entitled to possession and title of the TIF Bond, and all income and profits from the TIF Bond; the FDIC's interest in this bond is superior to that of all other claimants;

2. All rights, titles, and interests of every sort in the TIF Bond that Hoffman or any other entity with a subordinate interest may claim is terminated;

3. All income and profits from the TIF Bond from the date of default on the TIF loan to the present, and continuing, are the be paid to the FDIC;

4. A judgment shall enter against Hoffman in the amount of $1,500,000;

5. The FDIC is entitled, under the terms of the TIF note, to unpaid interest, default interest, late charges, other applicable fees, and protective advances that the FDIC may make.

The FDIC is also entitled, under the terms of the TIF note, to costs of this suit, and attorney's fees.  Pursuant to Federal Rule of Civil Procedure 54(d)(2), the FDIC may move for fees, which will be evaluated for reasonableness.  *See Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 521 (7th Cir. 1999).

## CONCLUSION

Accordingly, the FDIC's Motion for Summary Judgment, ECF No. 22, is GRANTED, and Hoffman's Motion for Summary Judgment, ECF No. 25, is DENIED.  Summary judgment is granted for the FDIC on Count I and Count II of its Complaint, ECF No. 1, as specified above. No other claims remaining, the clerk is directed to enter judgment as specified above, closing the case.

Entered this 24th day of September, 2015.

_____s/ Sara Darrow_____
SARA DARROW
UNITED STATES DISTRICT JUDGE
